Margaret S. Bullock v. Commissioner.
Bullock v. Commissioner
Docket No. 554.
United States Tax Court
1944 Tax Ct. Memo LEXIS 4; 3 T.C.M. (CCH) 1330; T.C.M. (RIA) 44406; December 28, 1944
*4 Joseph D. Brady, Esq., 433 S. Spring St., Los Angeles, Calif., and William L. Kumler, Esq., for the petitioner. Earl C. Crouter, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion HILL, Judge: This proceeding involves income tax for the year 1940. The respondent determined a deficiency in tax in the sum of $513.89 by reducing the basis used by petitioner in computing her gain on the sale of 100 shares of common stock of Bullock's, Inc. By this action the petitioner challenges the correctness of his determination. Petitioner also claims that she included in her return as income, the nontaxable proceeds of certain insurance policies and that she has overpaid her tax. The respondent has conceded that this item is nontaxable and that petitioner has overpaid her tax. The only question is the amount of overpayment. To determine that we must find the proper basis to be used in computing the gain on the stock. The case was tried on a stipulation of facts and oral and documentary evidence. The stipulation is made a part of the findings by reference and other findings are set out below. Findings of Fact Petitioner is an individual residing in Los Angeles, California. *5 Her return for 1940 was filed with the collector of internal revenue for the sixth district of California. Her return showed a total tax due of $52,608.71 which sum was paid in quarterly installments during 1941. This proceeding was begun January 12, 1943 which was within three years from the dates of the payment of the tax. In December, 1930 petitioner acquired 5,000 shares of common stock of Bullock's, Inc. as a gift from her father, John Bullock. In 1940 petitioner sold 100 shares of this stock at a price of $5,300. In making out her income tax return, petitioner used as a basis the sum of $31 a share or $3100, and reported a total gain as $2200 and a net gain for tax purposes as $1100. The shares received by petitioner from her father were a part of a block of 118,047 shares acquired by him on November 4, 1927 under the following circumstances: In 1908 Arthur Letts was the owner of the Broadway Department Store in the City of Los Angeles, California. At that time he organized a California corporation known as Bullock's, hereinafter called Bullock's California, to operate a new department store in that city. The original capital stock of 250,000 shares with a par value of $1 *6 was furnished by Letts. Petitioner's father, John G. Bullock, was an employee of Letts and was placed in charge of the new enterprise which was given his name. Several other employees of Letts went to work at the new store under Bullock's direction. These men and Bullock were its key executives and hereinafter are sometimes referred to as Bullock and associates or The Bullock group. The new store prospered and by January, 1927 had earned over $16,000,000 and had paid dividends aggregating $7,000,000. From time to time down to 1923, Bullock and his associates acquired stock in the business by gift and by purchase from Letts. The latter died in 1923 and his stock interest passed to Holmby Corporation and to his heirs. Holmby Corporation held title to the assets of his estate. During the interval from Letts' death to April, 1927 Bullock and his associates attempted to buy a greater interest in the business from Holmby Corporation. They wished to acquire working control and have a greater share of the earnings and profits. During the lifetime of Letts the Bullock group was content to maintain the status quo because of their regard for him. After his death they resented the siphoning *7 off of profits to persons who made no active contribution to the business. After numerous conferences in which the Bullock group threatened to resign in a body if not given a greater measure of control in the business, the Holmby Corporation, Letts Jr., and Janss, the only other stockholders, agreed to sell their shares to the Bullock group. Bullock, acting on behalf of his associates and himself, was given an option on April 19, 1927, to purchase on or before October 19, 1927, all of the shares owned or controlled by Holmby, which included the stock owned by Letts and Janss, at $50 per share. The option called for cash payment of $8,228,300, which included $20,000 attorney's fees, within 60 days after receipt of the election to exercise the option. On April 19, 1927 all of the outstanding shares of Bullock's California were owned by the following persons in the amounts set opposite their names: John G. Bullock and Associates
85,834 shares
Holmby Corp
155,834 shares
Harold Janss
4,166 shares
Arthur Letts, Jr.
4,166 shares
164,166 shares
Total
250,000 shares
In September, 1927 Bullock caused a corporation to be organized under the laws of Delaware called Bullock's, *8 Inc. It had authorized capital stock of 45,000 shares of preferred stock with a par value of $100, and 250,000 shares of common stock with no par value and was immediately licensed to do business in California. On October 17, 1927 Bullock notified Holmby Corporation of his election to exercise the option. Thereafter, on November 2, Bullock assigned the option to Bullock's, Inc. On the same day Bullock's, Inc. offered to buy all the old corporation's business, properties and assets including good will for $13,450,000 of Bullock's, Inc. debenture bonds and the assumption of liabilities. This offer was accepted. The deal to purchase from Holmby Corporation its Bullock's California stock was financed by an arrangement to sell to Citizens National Company (none of whose stock was owned by any person named herein) $4,000,000 of Bullock's, Inc. bonds and 43,154 shares of Bullock's, Inc. preferred stock for $7,714,899. An escrow agreement was set up with Citizens Trust & Savings Bank as escrowee through which to consummate deliveries, payments and transfers called for by the various agreements of all the parties involved. On November 4, 1927 the terms of the escrow were carried out with *9 the following results: Citizens National Company paid Bullock's, Inc. $7,714.899 for $4,000,000 face value of its 6% bonds and 43,154 shares of its preferred stock. Bullock's, Inc. exercised the option above mentioned and thereby purchased from Holmby Corporation 164,166 shares of Bullock's California stock by payment to the latter of $8,228,300. John Bullock and associates transferred to Bullock's, Inc. 85,834 shares of Bullock's California stock and received in exchange therefor 1,846 shares of Bullock's, Inc. preferred stock and 250,000 shares of Bullock's, Inc. common stock. Bullock's California transferred its business and all of its assets to Bullock's Inc. in consideration solely of $13,450,000 face value of the latter's five year debentures and the latter's assumption of all of Bullock's California's liabilities. Thereafter Bullock's California had no assets other than the debentures above mentioned. After the completion of the escrow agreement neither Holmby Corporation, its stockholders, Janss nor Letts, Jr., had any interest in Bullock's California or Bullock's, Inc. Upon completion of the escrow agreement Bullock's, Inc. owned all of the stock and all of the assets *10 of Bullock's California except the debentures issued to the latter in exchange for such assets. On the day of the completion of the escrow agreement Bullock's California declared a dividend consisting of $13,200,000 face value of debentures of Bullock's, Inc. deliverable to the latter as the owner of all of the outstanding capital stock of Bullock's California. The earnings and dividends per share of Bullock's California for the five years ending January, 1927, are as follows: Year Ended
Earnings
Dividends
January 31, 1923
$4.82
$1.50
January 31, 1924
7.87
1.50
January 31, 1925
5.87
6.00
January 31, 1926
6.72
4.20
January 31, 1927
7.34
5.40
$32.63
$18.60
Five-year average
$ 6.52
$ 3.72
During the same period the sales volume increased from $17,241,797 to $25,137,917.63. Business and market conditions in Los Angeles and the country generally were good and prospects for the future of department stores similar to Bullock's were high. Bullock's California remained in existence until 1937 when it was dissolved. John G. Bullock acquired 118,047 shares of the common stock and 854 shares of the preferred stock of Bullock's, Inc. in the aforesaid transaction *11 of November 4, 1927. On December 3, 1930 he gave to petitioner, his daughter, 5,000 shares of such common stock. The 100 shares sold by petitioner during the taxable year 1940 are traceable to the block of 5,000 shares received as a gift on December 3, 1930. On November 4, 1927, immediately prior to the carrying out of the escrow agreement, John Bullock was the owner of 39,734 shares of Bullock's California stock. These shares had an adjusted cost basis of $817,697.12. After the transaction of November 4, John Bullock owned 118,047 shares of common stock and 854 shares of preferred stock of Bullock's, Inc. The fair market value of the assets acquired by Bullock's, Inc. on this date was $14,487,785.14. The liabilities amounted to $1,533,246.88. On November 4, 1927 the fair market value of common stock of Bullock's California was $65 a share. The value of the option was $15 per share. The fair market value on November 4, 1927 of the preferred stock of Bullock's, Inc. was $100 a share. The fair market value on November 4, 1927 of the common stock of Bullock's, Inc. was $31 share. Opinion The respondent has determined a deficiency in petitioner's tax by reducing the basis used by *12 her in computing her gain on the sale of 100 shares of Bullock's, Inc. stock. Petitioner used as a basis the sum of $31 a share and reported a total gain of $2,200. The respondent reduced the basis to $6.627 per share, increasing her gain from $2,200 to $4,637.30. The stock basis was determined by the respondent in the following manner. Prior to November 4, 1927 petitioner's father was the owner of 39,734 shares of Bullock's California stock which had a cost basis to him of $817,697.12. The Commissioner determined that this cost should be allocated to the new stock acquired by him in Bullock's, Inc. by using a value of $16 per share for the common stock and $100 for the preferred. The allocation by the respondent resulted in the value of $6.627 per share for Bullock's, Inc. common stock. The difference in valuation between that used by petitioner and that used by respondent arises out of conflicting interpretations of the transaction of November 4, 1927. The respondent contends that this was a tax free reorganization within the meaning of the Revenue Act of 1926 and that the basis of Bullock's, Inc. common stock is to be determined from the cost of Bullock's California stock and not *13 the fair market value when acquired. The petitioner contends contra. This is the second time this transaction has been reviewed by this court. In a Memorandum Decision entered August 14, 1934, we held that the transaction was not a reorganization but a sale. Respondent insists that this decision is erroneous in the light of later cases, citing ; ; . Neither of the parties contends that our previous decision is res judicata and petitioner cites it only as authority to be considered in the light of . The question as to whether or not the transaction of November 4 was a tax free reorganization within the meaning of the Revenue Act of 1926 is open for decision. Both parties concede that in addition to the statutory requirements, the transferor corporation or its stockholders must have a continuing proprietary interest in the transferees. *14 In this case can it be said that Bullock's California had such proprietary interest in Bullock's Inc.? We think not. We have found that immediately following the transaction of November 4, Bullock's California owned debentures of Bullock's, Inc. and had no other assets. It had no store and no business. On the contrary, Bullock's, Inc., the transferee corporation, owned all of the capital stock of Bullock's California. It owned the business and the store. The Supreme Court has held that bonds of the transferee corporation are not a sufficient stake to make for continuity of interest. ;. We hold that the ownership of Bullock's Inc. debentures by Bullock's California without more is not such proprietary interest as would bring this transaction within the definition of reorganization contained in the Revenue Act of 1926. Can it be said that the continuing proprietary interest, the minimum essential element, is to be found in the shareholders of two companies? On the facts before us the question is, to what extent must the shareholders *15 of Bullock's California become shareholders in Bullock's, Inc. Holmby Corporation, the majority and controlling interest in Bullock's California, had no interest of any kind in Bullock's Inc. It had sold its shares in Bullock's California for cash. It was out of the picture. The Bullock group which brought about the transfer were minority shareholders in Bullock's California, and after November 4 owned all of the common stock and with Citizens National Company owned all of the preferred stock of Bullock's, Inc., which in turn owned all of the stock of Bullock's California. The majority interest in Bullock's California was transferred from one group to another. Thus respondent is asking us to hold that where a minority group of stockholders acquires the majority interest in a corporate business through the medium of an intervening new corporation, such a transaction would be a reorganization within the meaning of the Revenue Act of 1926. In the light of the decisions we can not agree. In this case the stock ownership of the business shifted from the majority stockholders to the minority group. In Merten's Law of Federal Income Taxation, Vol. 3, page 257, the author states: It *16 is the transfer of the stock itself and not the transfer of the corporation's assets that constitutes the reorganization, the requisite continuity of interest must of necessity be found directly in the stockholders * * * The majority shareholders of the transferor, Bullock's California, must maintain their position in the transferee, Bullock's, Inc. It is obvious that the majority shareholder, Holmby Corporation, of Bullock's California had nothing to do with Bullock's, Inc. The fact that John Bullock had an option to buy the majority stock interests for eight million dollars is not enough to warrant our holding that he owned that stock and thereby controlled Bullock's California for the purposes of effecting a reorganization under the Revenue Act of 1926. The Muskegon Motors Company case relied on by respondent is distinguishable on the facts. The respondent also argues that since all parties treated the transaction as tax free at that time the petitioner is now estopped to claim otherwise. This argument is not well taken. Estoppel has not been pleaded. It was a mistake of law without any attempt by any one to conceal the facts. Both parties erred in so treating it but *17 an innocent mistake of taxability does not lay the foundation for estoppel. , affirmed C.C.A. 4th, January 10, 1944. On this issue we find for the petitioner. In view of our holding that the transaction of November, 1927 did not constitute a reorganization within the meaning of the Revenue Act, we are required to determine the fair market value of Bullock's, Inc. common stock at the time petitioner's father acquired it. Respondent contends that the option price of $50 a share for Bullock's California is conclusive and that any other evidence of value for that stock is mere opinion and should be disregarded. The option price is important but an additional important factor which must be considered is that the option ran to the men who were the heart of the business. It was a concession to them because it is apparent that if they had been unable to come to terms they would have resigned from the business. Their threat to do just that is apparent. The petitioner's witnesses testified that Bullock's California stock was worth $65 a share and Bullock's, Inc. common was worth $35 a share. Their testimony was not contradicted *18 and under cross-examination was strengthened. The documentary evidence showed previous earnings totalled $32.63 per share and that the previous five years dividends totalled $18.60 a share. At the time (1927) this transaction was consummated Los Angeles and the country generally was on the threshold of business expansion. The stock market was receptive to all types of new issues. It would not be difficult in the light of those times to assume that future earnings and future dividends would be even greater. In our previous decision we held that the fair market value of Bullock's, Inc. stock was $31 a share. The evidence before us at the present time strengthens that conclusion and we have found that the fair market value of Bullock's, Inc. stock in November, 1927 was $31 a share. That figure is the basis of the stock to petitioner's father and donor and petitioner is entitled to use it. Decision will be entered under Rule 50.